UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **LARRY THOMAS HENDERSON,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 6:14-cv-0345-MHH |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Commissioner of the Social Security** } | |
| **Administration,** } | |
| } | |
| Defendant. } | |

# MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g) and §1383(c), Larry Thomas Henderson seeks judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge (ALJ), who denied Mr. Henderson's claim for a period of disability, disability insurance benefits, and supplemental security income. As discussed below, the Court finds that substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's ruling.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s]

1

the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'" *Riggs v. Soc. Sec. Admin., Comm'r*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the findings of the Commissioner. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.2d 1206, 1210 (11th Cir. 2005)). With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

On December 28, 2010, Larry Henderson applied for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 6-6, pp. 2-8, 9-14). Mr. Henderson alleged that his disability began on October 9, 2009. (*Id.*). After the Commissioner initially denied Mr. Henderson's claims, Mr. Henderson requested a hearing before an Administrative Law Judge (ALJ). (Doc. 6-4, pp. 15-17). The ALJ held a hearing on June 14, 2012. (Doc. 6-3, p. 24). During his administrative hearing, Mr. Henderson amended his alleged onset date to September 21, 2010. (Doc. 6-3, p. 27). The ALJ denied Mr. Henderson's claims on July 17, 2012. (Doc. 6-3, p. 7). On January 3, 2014, the Appeals Council declined Mr. Henderson's request for review (Doc. 6-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g) and § 1383(c)(3).

At the time of the administrative hearing, Mr. Henderson was 61 years old. He had a marginal education, and he could communicate in English. (Doc. 6-3, pp. 24-30). Mr. Henderson has past work experience as a truck driver. (Doc. 6-7, p. 22).

The ALJ determined that Mr. Henderson had not engaged in substantial gainful activity since September 21, 2010, the alleged onset date. (Doc. 6-3, p.

13).  The ALJ then found that Mr. Henderson suffers from the following severe impairments:

> Mild lumbar scoliosis with minimal degenerative changes at L3-4 and L4-5, moderate degenerative changes of the cervical spine with moderate to severe degenerative changes at C6-7, hypertension and osteoarthritis (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(Doc. 6-3, p. 13).  However, the ALJ concluded that the impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).

Next, the ALJ evaluated Mr. Henderson's residual functional capacity (RFC).  The ALJ determined:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except the claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. He can stand and walk combined for six hours in an eight-hour day and sit six hours in an eight-hour day. The claimant can frequently climb ramps and stairs, but not ladders, ropes and scaffolds. The claimant can frequently balance, stoop, kneel, crouch and crawl. The claimant can frequently reach overhead-bilaterally. The claimant cannot perform around work hazards.

(Doc. 6-3, p. 14).

Based on this RFC assessment, the ALJ found that Mr. Henderson can perform his past relevant work.  (Doc. 6-3, p. 18).  Considering Mr. Henderson's age, education, work experience, and RFC, the ALJ determined that there are jobs in significant numbers in the national economy that Mr. Henderson can perform.  (Doc. 6-3, pp. 18-19).  Thus, the ALJ concluded that Mr. Henderson is not disabled

as defined in the Act, and the ALJ denied Mr. Henderson's applications for benefits. (Doc. 6-3, pp. 22-23).

## ANALYSIS

To be eligible for disability benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id*. (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work

5

despite his impairments." *Id.* at 930 (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also* 20 C.F.R. § 404.1545(a)(1).

Mr. Henderson argues that he is entitled to relief from the ALJ's decision because: (1) the ALJ did not properly weigh the medical opinion evidence in the record; (2) the ALJ did not consider "substantial objective evidence" in the record supporting Mr. Henderson's allegations of a disabling condition; (3) the ALJ did not consider the combined effects of Mr. Henderson's impairments; (4) the ALJ did not properly evaluate Mr. Henderson's subjective allegation of disabling pain; (5) the ALJ did not properly characterize Mr. Henderson's daily activities; and (6) the ALJ substituted his opinion for the opinion of a medical expert. Mr. Henderson's arguments are not persuasive.

## I. The ALJ Properly Weighed the Medical Evidence in the Record.

Mr. Henderson argues that the ALJ did not properly weigh the medical opinion evidence in the record. Mr. Henderson contends that the ALJ improperly gave more weight to the opinion of Dr. Heilpern than the opinions of Dr. Moizuddin and Dr. Philpot-Bowen. The Court disagrees.

An ALJ is required to consider every medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). "'[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533

Fed. Appx. at 931 (quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

The ALJ assigned proper weight to Dr. Moizuddin's opinion. Dr. Moizuddin is a one-time examiner; therefore, the ALJ need not defer to Dr. Moizuddin's opinion. *Crawford*, 363 F.3d at 1160 (in general, the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). Dr. Moizuddin examined Mr. Henderson one time on January 14, 2011 at the request of the Alabama Disability Determination Service and the Social Security Administration. (Doc. 6-8, pp. 6-10). Dr. Moizuddin found that Mr. Henderson was positive for musculoskeletal stiffness and joint pain, that his squatting range of motion was reduced to 50 degrees due to low back pain, that his cervical spine rotation was reduced by 25%, and that his lumbar range of motion was reduced in all planes with flexion reduced to 70 degrees from 90 degrees, extension reduced to 10 degrees from 25 degrees, right lateral flexion reduced to 10 degrees from 25 degrees, left lateral flexion reduced to 15 degrees from 30 degrees, and left lateral flexion reduced to 20 degrees from 30 degrees. (Doc. 6-8, pp. 8-9.). Dr. Moizuddin's final impression was that Mr. Henderson had low back pain, neck pain, bilateral shoulder pain, polyarthralgias, hypertension-uncontrolled, and mild scoliosis of thoraco-lumbar spine. (Doc. 6-8, p. 8). Dr. Moizuddin observed that Mr. Henderson had full

muscle strength, no muscle atrophy, normal reflexes, and no sensory or neurological defects. (Doc. 6-8, pp. 8-10).

The ALJ assigned "some weight" to Dr. Moizuddin's opinion. The ALJ noted that Dr. Moizuddin's examination did not include an opinion as to Mr. Henderson's residual functional capacity. (Doc. 6-3, p. 16). The ALJ also noted that Dr. Moizuddin's findings "are generally consistent with the overall great weight of the evidence of record, which does not support the claimant's allegations of severe pain and functional limitations." (*Id.*). Substantial evidence supports the ALJ's decision to assign some weight to Dr. Moizuddin's opinion.

Mr. Henderson argues that the ALJ improperly discounted Dr. Moizuddin's findings of reduced range of motion, low back pain, neck pain, bilateral shoulder pain, polythargias, uncontrolled hypertension, and scoliosis of the thoraco-lumbar spine. The record suggests otherwise; the ALJ properly accounted for those limitations in Mr. Henderson's RFC. (Doc. 6-3, p. 17). Dr. Moizuddin's opinions are consistent with the limitations that Dr. Heilpern, the reviewing State agency medical consultant, noted. The ALJ found that both Dr. Moizuddin's and Dr. Heilpern's opinions are consistent with the great weight of evidence in the record. (Doc. 6-3, pp. 16-17). The record supports this finding.

Dr. Heilpern completed a physical residual functional capacity assessment for Mr. Henderson. (Doc. 6-8, pp. 13-20). Dr. Heilpern noted Mr. Henderson's

primary diagnosis of mild lateral thoracolumbar curvature. (Doc. 6-8, p. 13). Dr. Heilpern found that Mr. Henderson's allegations of disabling pain were partially credible based on the evidence in the file. (Doc. 6-8, p. 18). According to Dr. Heilpern's RFC assessment, Mr. Henderson can occasionally lift fifty pounds, frequently lift 25 pounds, stand/and or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (Doc. 6-8, p. 14). Dr. Heilpern noted that Mr. Henderson should never climb ladders, ropes, or scaffolds, is limited in his ability to frequently reach overhead, and should avoid all exposure to hazards like machinery and heights. (Doc. 6-8, pp. 15-17). Dr. Heilpern noted the absence of a medical source statement in the record. (Doc. 6-8, p. 19). The ALJ stated that he assigned "more weight" to Dr. Heilpern's opinion than to the other medical opinions in the record because the ALJ found that Dr. Heilpern's opinions are "generally consistent with the great weight of the evidence of record." (Doc. 6-3, p. 17). Substantial evidence in the record supports the ALJ's conclusion.

The Court also finds that the ALJ gave proper weight to Dr. Philpot-Bowen's opinion. Dr. Philpot-Bowen is a chiropractor. Chiropractors are not "acceptable medical sources" for purposes of Social Security evaluations. Consequently, a chiropractor's opinion "cannot establish the existence of an impairment." *Crawford*, 363 F.3d at 1160 (citing 20 C.F.R. §§ 404.1513(a),

416.913(a)); *see also Miles v. Soc. Sec. Admin.*, 2012 WL 851755, at *2 (11th Cir. March 15, 2012) (per curiam) (stating that "an ALJ has no duty to give significant or controlling weight to a chiropractor's views because, for SSA purposes, a chiropractor is not a 'medical source' who can offer medical opinions"). Still, a claimant may present opinions from "other sources" such as chiropractors to establish the severity of his impairments and to demonstrate how the impairments affect his ability to work. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).

The ALJ clearly articulated his reasons for affording Dr. Philpot-Bowen's opinion little weight. The ALJ found that Dr. Philpot-Bowen is not a credible medical source. (Doc. 6-3, p. 17). The ALJ noted that Dr. Philpot-Bowen's opinion was not consistent with the record as a whole. (*Id.*). The ALJ properly assigned Dr. Philpott-Bowen's opinion little weight, and the ALJ properly gave Dr. Heilpern's opinion more weight than Dr. Philpot-Bowen's opinion because Dr. Heilpern is considered an expert for purposes of a Social Security disability evaluation. *See* 20. C.F.R. 404.1527(f)(2), 416.927(f)(2); Social Security Ruling (SSR) 96-6p (a non-examining physician is considered a highly qualified physician who is an expert in Social Security disability evaluation).

II. **The ALJ Considered "Substantial Objective Evidence" in the Record.**

Mr. Henderson contends that the ALJ did not consider "substantial objective evidence" in the record that supports his allegations of a disabling condition.

10

Specifically, Mr. Henderson points to Dr. Philpot-Bowen's opinion that an x-ray of Mr. Henderson's neck showed reversal of normal cervical curve, moderate-to-severe degenerative changes of C6 and 7, moderate degenerative changes of throughout the cervical spine, and x-rays of the lumbar spine showed lumbar scoliosis, moderate degenerative changes in the lumbar spine, and minimal posterior position of L5 on S1. Mr. Henderson argues that the ALJ ignored this evidence. The record demonstrates that the ALJ did not ignore Dr. Philpot-Bowen's findings. The ALJ specifically stated that "lumbar x-rays performed on February 2011 [] provided little support for the claimant's allegations of severe functional limitations and pain, and they show only mild lateral curvature convex to the left, and minimal discovertebral joint degenerative changes at L3-4 and L4-5 (Exhibit 3F)." (Doc. 6-3, p. 16).

In like fashion, citing portions of Dr. Philpot Bowen's and Dr. Moizuddin's opinions, Mr. Henderson states that the "ALJ chose to ignore the substantial objective evidence documented by the examining medical professionals." In fact, the ALJ accounted for the "substantial objective evidence" to which Mr. Henderson refers in determining Mr. Henderson's residual functional capacity. In making that RFC determination, the ALJ also considered the fact that "the record in this case reveals no restrictions recommended by any treating or examining

11

physician (Exhibits 1F, 5F, and 6F)." The record supports the ALJ's RFC findings.

### III. The ALJ Considered the Combined Effects of Mr. Henderson's Impairments.

At step three of the sequential evaluation process, the ALJ must consider the combined effects of all of the claimant's impairments. *Jones v. Dep't. of Health and Human Serv's*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). To properly assess the combination of impairments at step three of the evaluation process, the ALJ must (1) note the evidence on which the conclusion was based; and (2) specifically state that all impairments were considered. *See Gordon v. Astrue*, 249 Fed. Appx. 810, 812 (11th Cir. 2007); *Sneed v. Barnhart*, 214 Fed. Appx. 883, 886 (11th Cir. 2006); *Jones*, 941 F.2d at 1529. The ALJ properly considered the combination of Mr. Henderson's impairments.

The ALJ accounted for Mr. Henderson's severe impairments: "mild lumbar scoliosis with minimal degenerative changes at L3-4 and L4-5, moderate degenerative changes of the cervical spine with moderate to severe degenerative changes at C6-7, hypertension and osteoarthritis (20 C.F.R. §§ 404.1520(c) and 416.920(c))." The ALJ also considered Mr. Henderson's non-severe impairments: "sinus bradycardia, palpitations, and cervical strain." (Doc. 6-3, p. 16). The ALJ found that Mr. Henderson:

>does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404. 1526, 416.920(d), 416.925, and 416. 926).

(Doc. 6-3, p. 13). The ALJ noted that Mr. Henderson did not allege that "any of his impairments meet or medically equal the criteria of any section of the Listing of Impairments." (Doc. 6-3, p. 13). Additionally, the ALJ considered section 1.04 of Appendix 1 concerning disorders of the spine and section 4.00 of Appendix 1, dealing with disorders of the cardiovascular system and concluded that Mr. Henderson did not meet those listings. (Doc. 6-3, pp. 13-14).

Substantial evidence in the record supports the ALJ's conclusion that Mr. Henderson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Doc. 6-3, p. 13). *See Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) ("The ALJ specifically stated that Hutchinson did not have an 'impairment, individually or in combination' that met one of the listed impairments in evaluating step three of the process. That statement shows that the ALJ considered the combined effects of Hutchinson's impairments during her evaluation."); *Jones*, 941 F.2d at 1533 (finding that the ALJ properly considered the combination of impairments by stating "[the claimant] does not have an impairment or

*combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.") (emphasis in original).

## IV.     The ALJ Properly Applied the Pain Standard.

The Eleventh Circuit applies a three part pain standard when a claimant relies on subjective complaints of pain to establish disability.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart,* 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  "[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  *Id.* at 1225 (internal citation omitted).

The ALJ found that Mr. Henderson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mr. Henderson's] statements concerning the intensity, persistence and limiting effects of [his] symptoms" were not credible to the extent that they were inconsistent with the residual functional capacity assessment for Mr. Henderson.  (Doc. 6-3, p. 15).  The ALJ based his credibility assessment on Mr. Henderson's lack of medical

treatment over a seven year period in which Mr. Henderson was working and presumably could have afforded treatment, and Mr. Henderson's failure to seek treatment for eighteen months after he stopped working in October 2009. The ALJ also noted the lack of objective medical evidence in the record and considered Mr. Henderson's activities of daily living, such as preparing meals, performing household chores, shopping for personal items and groceries, watching television, fishing, running errands, and visiting family. (Doc. 6-3, pp. 15-17).

"Although a claimant's admission that [he] participates in daily activities for short durations does not necessarily disqualify the claimant from disability," an ALJ may consider a claimant's daily activities. *Hoffman v. Astrue*, 259 Fed. Appx. 213, 219 (11th Cir. 2009). Mr. Henderson does not deny doing some level of activity including preparing food, cooking, driving, cleaning, and fishing a few times a year. The ALJ properly examined Mr. Henderson's activities of daily living in making his credibility findings. *See Lanier v. Comm'r of Soc. Sec.*, 252 Fed Appx. 311, 314 (11th Cir. 2007) (finding no reversible error in the ALJ's assessment of the claimant's credibility when the ALJ determined that the claimant's testimony about the amount of pain was inconsistent with her description of her activities, which included household chores like laundry and vacuuming, fishing if someone helped her reel in the fish, and driving short distances).

Citing *Snyder v. Commissioner of Soc. Sec.*, 330 Fed. Appx. 843 (11th Cir. 2009), Mr. Henderson argues that the ALJ may not discredit allegations of pain solely based on the lack of objective medical evidence. In this case, the ALJ considered not only the lack of objective medical evidence but also Mr. Henderson's seven year gap in treatment while he was working and Mr. Henderson's failure to seek medical treatment until 18 months after he stopped working. (Doc. 6-3, pp. 15, 17). Mr. Henderson's argument is not persuasive.

The record reflects that the ALJ's three stated reasons for discrediting Mr. Henderson's testimony are supported by substantial evidence. Discrepancies between Mr. Henderson's testimony and other items in the record provide substantial evidence that undermine his credibility. The ALJ did not err in discounting Mr. Henderson's statements about the severity of his pain. *See Wilcox v. Comm'r of Soc. Sec.,* 442 Fed. Appx. 438 (11th Cir. 2011) (affirming the ALJ's credibility determination because the ALJ "considered [the claimant's] testimony together with all of the medical evidence in the record").

### V. The ALJ Did Not Substitute His Opinion for that of a Medical Source.

Mr. Henderson contends that by "choosing to rely upon Dr. Heilpern's testimony, the ALJ has 'cherry picked' a source with very limited information and used that source to justify the substitution of his judgment for that of the Medical

and Vocational Experts of this case." (Doc. 11, p. 20). This argument is not persuasive.

The ALJ cannot substitute his opinion for the opinion of medical or vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 732 (11th Cir. 1992). It is improper for the ALJ to act as a physician. *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992) (Johnson, J. concurring) ("[The ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.").

Mr. Henderson does not specifically identify the medical expert for whom the ALJ allegedly substituted his opinion. The record does not reflect extensive medical treatment. The ALJ observed that "none of the records contains a true opinion or medical source statement, the records have been used to help determine the full scope of the claimant's impairments (Exhibit 6F)," and "a review of the record in this case reveals no restrictions recommended by any treating or examining physician (Exhibits 1F, 5F, and 6F)." (Doc. 6-3, pp. 16-17).

Dr. Philpot-Bowen did opine that Mr. Henderson could only sit, stand, and walk for one hour continuously; that during an eight-hour day he could sit only a total of three hours and stand and walk for two hours; and that he would be required to lay recumbent for three to four hours to alleviate pain and rest per day. (Doc. 6-8, pp. 22-24). However, the ALJ assigned Dr. Philpot-Bowen's opinion little weight because chiropractors are not an acceptable medical source and

because Dr. Philpot-Bowen's opinions were inconsistent with the great weight of the evidence of record. (Doc. 6-3, p. 17). Even though Dr. Moizuddin did not give an opinion regarding Mr. Henderson's residual functional capacity, his impression was that Mr. Henderson suffered from low back pain, neck pain, bilateral, shoulder, polythralgias, hypertension-uncontrolled, mild scoliosis of thoraco-lumbar spine, and reduced range of motion. (Doc. 6-8, pp. 6-10). The ALJ accounted for these limitations in Mr. Henderson's RFC. The ALJ's opinion does not contradict a valid medical source statement or ignore limitations identified by a valid medical source. The ALJ's opinion regarding Mr. Henderson's RFC is based on the medical evidence in the record. The record does not support Mr. Henderson's argument that the ALJ substituted his opinion for that of a medical source.

## CONCLUSION

Having examined the available evidence, the ALJ determined that Mr. Henderson is not disabled. That finding rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. The ALJ's decision also is consistent with applicable legal standards. Therefore, the Court **AFFRIMS** the decision of the Commissioner. The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 8, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE